We are here for the calendar of November 15, 2022 in Montgomery, Alabama, and we're here for the first case of United States of America v. Robert Scott Kennedy. Is counsel present and prepared to argue? Yes, Your Honor. You may begin. Good morning, Your Honors. May God please the Court. My name is John G. Edwards. I'm the attorney who's appointed to handle Mr. Kennedy's direct appeal for misconviction after his trial counsel, who was also appointed, was relieved of representation. Mr. Kennedy is serving a 30-year sentence for gun and drug charges. That's predicated upon a finding that he was an armed career criminal under the Armed Career Criminal Act. At sentencing, his trial counsel objected to that finding for various reasons. And the government at sentencing stated that its position was that there were only essentially three prior convictions that qualified as predicates for the armed career criminal application. Specifically, the government said that it's the government's position that the armed career criminal designation should be based on the first burglary, which was of a dwelling, the possession of marijuana with intent to distribute, and a possession of marijuana, excuse me, a possession of methamphetamine prior conviction. The district court thereafter ruled that the government, quote, concedes that that was what the Armed Career Criminal Act should be based upon and sentenced him accordingly. When asked if there were any objections to the sentence, the government at sentencing said no, that there were not. We can cancel the, the government never said the fourth conviction didn't qualify, did it? If I, and I'll just read, Judge, what the transcript says. It says, what's least clear from Mr. Kennedy's prior potential counting convictions is the 1999-66, CR-66 burglary does not indicate it's a residence rather than a building. And therefore, it's, quote, the government's position that the armed career criminal designation should be based on the first burglary, the dwelling of the victim. That's fine, but that doesn't concede that the 1999 burglary doesn't qualify. It's just that we got a better chance of winning with the first, the earlier burglary. Which is, respectfully, did I find that the district court noted that the government concedes and thereafter... But the district court was wrong about that. The government never conceded that the second burglary, the 1999 burglary, didn't qualify. Well, they just simply said, look, it doesn't show whether it was a dwelling or other structure, so you should use the third one. Cut our risk here. Give us the sure thing. But that doesn't mean you concede that the second burglary doesn't qualify. They absolutely could have said that. They did not know one way or another, but they said specifically in sentencing, Your Honor, that they agreed that it was the government's position that the armed career criminal should be based on one burglary, not the other, is my position, Judge. I would also note that in regards to the case law regarding these kinds of problems, that in the case of Bryant, in the case of Petit or Pettit, and in the case of Canty, where there's a specific objection raised by a defendant and the government does not focus or rely on an alternative proposition or alternative conviction, that that issue has been deemed waived and abandoned and cannot be resurrected in appeal. In Canty, the government specifically did not present any evidence or facts regarding prior convictions and was not entitled to remand it after the law had changed and vacated one of them. So we only have to address this other burglary if we find that the marijuana conviction and the burglary conviction that the district court judge did clearly rely on were somehow invalid as ACCA predicates. So doesn't Gundy resolve the burglary issue? I mean, is there any argument that you have as to that burglary offense that isn't resolved by Gundy? Yes, sir. I believe there are several things that Gundy did not focus on particularly that would not apply in this case. In Gundy, there was an indictment or two indictments regarding burglary that read, a burglary of a dwelling house and a burglary of a business house. Here, we've got one burglary that was clearly a burglary of a dwelling that was relied on by the district court. Okay. Yeah, and so as to that burglary, does Gundy resolve that one? I don't, I've objected and asked this court respectfully to reconsider Gundy in light of the dissent by Justice Pryor on that case. I think Gundy does not address the secondary burglary either in this case. That burglary, as far as I can tell from the record, which all I see is the transcript of what occurred at sentencing, I could not find where the conviction was in the record on that second burglary. But it only stated that there was a building that was burglarized. I don't think Gundy addresses Georgia law regarding the second burglary. Well, I mean, so this is what Gundy said. And I really, you know, I don't know that you need to focus a lot on that second burglar because the district court didn't necessarily focus on it. It may be something that if we were to rule on your arguments that should be addressed on remand. But, I mean, this is what Gundy said. It said that, quote, Georgia burglary convictions involving these three elements, one, an unlawful entry, two, into a dwelling house or building, three, with intent to commit a crime therein, substantially conform to the generic definition of burglary, end quote. So it seems like in Gundy we said dwelling house or building. And Georgia's definition of building is the problem with that, Your Honor. But, I mean, wasn't Georgia's burglary law the one that we were addressing in Gundy? It was, Your Honor. Yes, sir. But I don't think it particularly considered the all-encompassing scope of what a building constitutes in Georgia, which is the cases I've cited show that it And those things, burglarizing a chicken coop, I don't believe would qualify as an armed career criminal predicate. Also, Judge, I would note that we've raised issues under desk camps regarding the breaking and entering. And I also raised an issue regarding the new decision in Borden where burglary in Georgia subsumes the potential for a recklessness intent because it's the burglary or the entry to intent with intent to commit a theft therein or a felony therein. And if that felony or theft is based on a reckless mens rea or reckless intent, then under Borden, if you extend, of course, Borden only dealt with the, I believe, the elements clause. And I understand that. But if it were to, I think it should apply just as well given the nature of the statute and what it's trying to address. I also raised issues regarding whether or not a court could make these type of factual determinations about what a burglar is, what a building is without a jury finding. For example, here where you've got a, where the only thing you know is that a building under Georgia law was burglarized, that building could be anything. It could be a parked car, any kind of edifice. It could be a parked boat or an airplane that's parked. On the marijuana issue, which you haven't talked about, but it's definitely, I think, the focus of your briefing. So you say that, so we've said, I've said, that Florida's marijuana, definition of marijuana does not match the federal definition because the federal definition excludes mature stocks. Georgia, though, also excludes mature stocks, right? So it doesn't, don't those match? Georgia's got an additional wrinkle there, Your Honor. There's the mature defoliated stocks, not the mature stocks. That's the difference between Georgia and the federal law. In Georgia, you can have mature stocks so long as there's no leaves on it. Under the federal law, it just says mature stocks. Yeah, but the federal law criminalizes the leaves. So it isn't, doesn't the federal law match Georgia's because the federal law criminalizes the leaves, but not the mature stocks in Georgia's laws? I mean, defoliated means without the leaves. So Georgia's law says without the leaves. I mean, isn't that? I thought it was an exception for... Yeah, right. It is an exception. So Georgia's exception is mature stocks defoliated isn't mature stocks in the federal. Isn't that the same thing, I guess? I mean, do you think that the federal exception for mature stocks covers the leaves and the buds and stuff? So you could like have leaves and buds that you sell people as long as they're attached to the stock under federal law? That doesn't seem right to me. Well, it's a mismatch, Your Honor. And categorically, it makes things different under federal or Georgia law. But the defoliated leaves is more restrictive. So I guess what, I mean, just as a practical matter, I mean, you know, you practice criminal law. What do you think would be criminalized under Georgia law that would not be criminalized under federal law or vice versa? Well, there's the defoliated leaves problem. Yeah, but I mean, what, I mean, physically, like, what do you mean? Like, so are you saying under Georgia law, because it says defoliated mature stocks are not criminalized, that just the stock of the plant is legal under Georgia law, but then under federal law, there's something more than the stock of the plant that's legal? Well, I think in federal law, you've got mature stocks that are accepted. To my understanding, those would then be legal. Is that right? Right, yeah. But I mean, what does that mean, though? Well, I'm not sure what one would do with them. I assume it would be just some sort of hemp purpose or some sort of farming purpose or something along those lines. And I guess my question also is, like, for them to become mature, they have leaves at some point. They're just, they're defoliated as the leaves, as the stocks grow? I would assume, Your Honor, that they, to defoliate something would be like when they use it on crops, they put a chemical agent on it to cause the leaves to drop off, such as when, I think they use it with cotton sometimes. The, so in Georgia, you can't have mature stocks with leaves. But in the federal, you can. But can you, though? I guess that's my question. It seems like the leaves are illegal, whether they're attached to a mature stock or not. Well, the federal statute did not consider that exactly. I mean, I would say that they allow leaves on the stock or not. Georgia, I don't think would let you have leaves, but they'd let you have a stock. And the federal is broader in that they allow the leaves. Okay. I don't know if the federal does allow the leaves, but I guess we'll see. I would also note that also these conventions predate the new hemp laws that were in federal and state. Mr. Edwards, you've gone over your time, but I'll let you have some remaining time for rebuttal. Thank you very much. Thank you, Your Honor. Good morning. You may proceed. Good morning. May I please the Court? Sophia Vickery for the United States. I'll start with the sentencing issues, and I think it might be helpful to talk about the ACCA and the guidelines separately. As I've already been discussed under the ACCA, there are required to be three predicate offenses, and those can include burglary, which is one of the enumerated offenses in the statute, as well as serious drug offenses. The defendant here has four predicate offenses. One of those is the uncontested marijuana offense. There are two burglaries, one of which the defendant argues was waived, but the government has a different position. And there's a fourth conviction for marijuana, about which there's more discussion in the original briefing. So this Court need not reach the fourth issue regarding marijuana if it finds that under United States v. Gundy, both the 1998 and 1999 burglaries are ACCA predicates. Gundy considered the same statute under which Kennedy was convicted and held that a conviction involving an unlawful entry into a dwelling house or building with intent to commit a crime therein substantially conforms to the definition of generic burglary and tailor. That's all that this Court needs to find that under binding precedent, both the 1998 and 1999 burglaries are predicates for the ACCA. Go ahead. Does the government have to say, if a district court judge says to the government, well, you're conceding that point, does the government have to clarify the record and make it clear that they are not conceding a point? No, Your Honor. And I also don't agree with the characterization that that was the concession that the district court was referring to. I think the district court was saying that the government conceded that it wasn't clear that the burglar was of a dwelling versus of a building. And that's what the government had said, that this was the least clear of the predicates. It's also important to note that at the time the government said that, it was because the district court already had ruled in the government's favor on the marijuana conviction and with respect to Gundy. So, at that moment, the government already had three predicate offenses and there was no need for there to be an extra backup predicate finding. What about the argument from opposing counsel that it is unclear, that the building could be a chicken coop, it could be a boat, it could be whatever, and so there is a problem on the record. If we wanted to affirm on that grounds there's a problem on the record here, we would need something else on the record to tell us what the building was that was burglared in that conviction. He has addressed both in the PSR and by this court's decision in Gundy. So, the PSR says that the state records of conviction indicate that it was of a building. That's an unobjected to fact. I don't think anyone disputes that that's what the state records of this conviction say. This court in Gundy specifically held that a burglary of a dwelling or a building, those are also, building is also used in Taylor in the definition of generic burglary, that qualifies and that stems from the fact that the locational elements of the Georgia statute are divisible. But because it's a building, we know, for example, that it's not a vehicle, it's not a railroad car, it's not a watercraft, et cetera. So, according to the holding in the marijuana conviction is relevant with respect to the guidelines and I can discuss that as well. It requires two qualifying offenses as relevant here. Those include controlled substance offenses, which this court has defined to be federal or state law involving the definition of a controlled substance. So, the two qualifying offenses here are, again, one is uncontested involving methamphetamine and the other one is the marijuana conviction. This court does have a pending decision in Jackson, which might be informative to this question. However, Jackson is limited to the ACCA context and so regardless of that analysis, the government has other arguments as to why the guidelines should apply the time of prior conviction rule in considering which drug schedule to consult. That was the holding of the Sixth Circuit in the recent case United States v. Clark, which explained that the guidelines text itself is backward looking and looks to the prior conviction as defined by the prior law under which the defendant was convicted. I'd also point to the Supreme Court's decision in McNeil, which is an ACCA case but informative for this as well, that explains the culpability and dangerousness attached to the time of the prior conviction. And a conviction doesn't cease to be a controlled substance offense simply because of a subsequent change in state law. That same analysis would apply here for the marijuana conviction, specifically under the guidelines to controlled substance offense and qualifying offense. What do you say about the arguable mismatch between the Georgia and the federal law? Is there a mismatch or is it basically that they're just excluding the same thing from their operations in defining marijuana? I think the latter, Your Honor. Mature stocks and completely defoliated mature stocks, I don't know about the leaves and I'm not sure that there's a scientific difference, possibility difference between the two or even if there were that this would be. Right, I mean the leaves don't become legal just because they're still attached to the stock, right? I can't traffic, I mean it'd be really interesting to know if in the case that I could traffic marijuana if they were just, if the leaves were still just attached to the stock. That's not what federal law allows. Correct. Okay. I mean the leaves have to grow on something. Right, I'm not sure if a mature stock ends up with leaves in the end or not. If the court has no further questions, government would rest on his brief and simply ask the court to affirm. Thank you, Mr. Griffith. Thank you. Mr. Edwards, you have some time remaining for rebuttal. Thank you. Thank you, Your Honor. Just briefly, I would just say that I believe that defoliated must mean something because it's there and that we've got mature stocks versus defoliated stocks. We've got leaves versus no leaves. I think that's a significant enough mismatch to cause a problem between the federal law and the Georgia law and also it doesn't, that I would assume predates the hemp laws change too. With regards to the waiver issue, I would ask the court to focus on a couple of cases such as Bryant and Petit. In Bryant, I believe the district court there said the government didn't object when all it said was I find at most three convictions qualify and that's all it said. And they said, well, you didn't say anything when the judge ruled that there's at most three and there was no objection. In Petit or Petit, there's a footnote that says that these sorts of issues should have been resolved at sentencing. But should it matter? I believe, I'm not sure if this is accurate. I don't have the record before me but my recollection of the record is that your client did not object to the burglary, the 1999 burglary in the PSI as a predicate, as a potential enhancement. He objected to armed career criminal status and included those burglaries and I'd have to go back and look at what exactly all he was included in that. I didn't write that but he did object where you have the question about, he said, I'm not an armed career criminal and I know that. And for whatever reason, the government then should have said, well, we think there's all these other convictions too that would count even if you don't find these. But they didn't do that. And as a matter of fact, they said what I'm saying here now which is a building in Georgia is a real problem. Judge, don't rely on that one. We're just going to use the other ones. And the judge said, okay, that's your position. I agree with you. You concede it. And they said yes. And they didn't raise in their initial brief either. I haven't even been able to brief this fully in my brief and argue this. It's only on supplemental briefs that the court raised the issue. I would just say, yes, sir. Let me interrupt you. Didn't the judge actually say that you concede that it doesn't qualify? No. They were not specifically asked that. And neither were they asked that in Bryant, and the government concedes. With regards to the burglary, it's not clear it was a burglary of a dwelling, so we will take that out of the enumerated offenses for the Armed Career Criminal Act purposes. And it did say the government – it used the word concede. And the government then asked – they were then asked if they had any objections. And they said no at sentencing. I think the – The concession was it wasn't clear whether it Well, I think they knew it was not a dwelling. It just said building. And they didn't – in order to figure that out, you have to start making factual determinations with no jury involved and no plea of guilty that established what that building was. So the judge would be left to guess, as would this court. If you were to come in and say that's second burglary, that's a building under Georgia law. A building is not just a chicken coop or a car or, you know, a storage shed or a metal trailer that can be transported. It's got to be something that's armed for – it would require a violation of the Sixth Amendment right to a jury trial to make that determination. And I think that's what the government was concerned about at sentencing. And I think that's a good – I think that's a valid concern. That's what I've taken up with a lot of my cases and tried to demonstrate to the court, that it violates Apprendi and the Sixth Amendment right to a jury trial to make those kind of – make those kind of calls. As this court noted in one of those cases, that in order for a state to make burglary a qualifying predicate conviction, it's got to lay out those things and it's got to have a district attorney who's required to make these sorts of findings. And Georgia doesn't – case law in Georgia, the statute's not clear, but the case law clearly opens up the word building to all sorts of interpretations and causes problems. And I don't think Georgia has done that. I think when you look at a case such as Howard, where they look to state law decisions to determine what type of conviction it was, that you find that the building in Georgia is just as vague as that under Alabama's law. And if there's anything further, I'm happy to address it. Thank you for the opportunity to represent Mr. Kennedy. Thank you, Mr. Edwards. Thank you, Ms. Vickery. The next case on the calendar is Wayne Lee v. United States of America.